**RECORD NO. 13-2500**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

BLUE SKY TRAVEL AND TOURS, LLC;
MAHMOUD RIAD MAHMOUD,

*Plaintiffs-Appellees,*

v.

NASSER AQEEL AL TAYYAR;
AL TAYYAR GROUP,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

---

### BRIEF OF APPELLEES

---

Warner F. Young, III, Esq.
Matthew C. Indrisano, Esq.
ALLRED, BACON, HALFHILL & YOUNG, PC
11350 Random Hill Road
Suite 700
Fairfax, Virginia 22030
(703) 352-1300
wyoung@abhylaw.com
mindrisano@abhylaw.com

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2500__   Caption: _Blue Sky Travel and Tours, LLC et al v. Nasser Aqeel Al Tayyar, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

Blue Sky Travel and Tours, LLC
_____
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.     Does party/amicus have any parent corporations?                          ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐ YES ☑ NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/Matthew C. Indrisano            Date:   December 19, 2013

Counsel for: Blue Sky Travel and Tours, LLC

## CERTIFICATE OF SERVICE
****************************

I certify that on   December 19, 2013   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

S. Alexander Miller, Esq.
1200 G Street, NW
Suite 800
Washington, DC 20005
(202) 810-3005
(202) 888-3090
alex@millerlawdc.com

Martin F. McMahon, Esq.
McMahon & Associates
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
(202) 862-4343
(202) 828-4130
mm@martinmcmahonlaw.com

/s/Matthew C. Indrisano                  December 19, 2013
(signature)                                        (date)

- 2 -

# <u>TABLE OF CONTENTS</u>

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT .......................................................2

ISSUES PRESENTED ..........................................................................2

STATEMENT OF CASE .......................................................................3

   A. STATEMENT OF FACTS ..............................................................3

   B. PROCEDURAL HISTORY ............................................................5

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT .......................................................................................12

   I.    THE CONTRACT IS NOT SUBJECT TO THE VIRGINIA STATUTE OF FRAUDS ...............................................................12

       A.   Contracts Which Can Be Performed By One Party Within A Year Are Not Subject To the Virginia's Statute Of Frauds ......12

       B.   The District Court Properly Placed The Burden Of Proving The Application Of The Statute of Frauds On ATG ...............17

       C.   No Timely Objection Was Made To The Testimony of Mahmoud Riad To Preserve The Statute of Frauds Defense ...19

       D.   The Admission That An Oral Contract Existed Precludes the Al Tayyar Group From Raising The Statute of Frauds As a Defense ..................................................................................20

i

E.    The Application Of The Statute Of Frauds In This Case Would Violate The Rationale Of The Rule .............................22

F.    Equitable Estoppel and Part Performance Remove The Contract From The Statute of Limitations................................23

II.    THE DISTRICT COURT CORRECTLY AWARDED BLUE SKY $10 MILLION IN DAMAGES FOR ITS SHARE OF PROFITS......25

III.    THE DISTRICT COURT CORRECTLY AFFIRMED THE MAGISTRATE JUDGE'S DISCOVERY SANCTION ....................27

A.    ATG Waived Objections Under Rule 72(a) Of The Federal Rules Of Civil Procedure ..........................................................27

B.    The District Court Did Not Affirm The Sanction Order Of The Magistrate Judge Based Upon Spoliation................................29

C.    The District Court's Evidentiary Sanction Was Appropriate Given ATG's Discovery Abuse...................................................32

1.    ATG's Bad Faith ..............................................................33

2.    Prejudice Caused By ATG's Actions..............................35

3.    The Need for Deterrence .................................................36

4.    Less Drastic Sanctions Would Not Have Been Effective.........................................................................36

CONCLUSION......................................................................................39

CERTIFICATE OF COMPLIANCE.....................................................40

CERTIFICATE OF AUTHORITIES ....................................................41

# TABLE OF AUTHORITIES

## CASES

*Adams-Riker, Inc. v. Nightingale*,
  119 R.I. 862, 383 A.2d 1042 (1978)...............................................................22

*Agbey v. Dalloul*,
  41 Va. Cir. 3 (1996).......................................................................................18

*Albanese v. WCI Community, Inc.*,
  530 F. Supp. 2d 752 (E.D. Va. 2007)............................................................16

*Anderson v. Foundation for Advancement, Education &
Emp't of America Indians*,
  155 F.3d 500 (4th Cir.1998)...........................................................................32

*Eaves v. Vial*,
  34 S.E. 978 (1900), cited by ATG...................................................................19

*Fedder Dev. Corp. v. FB Hagerstown, LLC*,
  181 Fed. Appx. 384 (4th Cir. Md. 2006).........................................................21

*Hale v. Hale*,
  90 Va. 728, 19 S.E. 739 (1894) ................................................................ 24-25

*Hathcock v. Navistar International Transport Corp.*,
  53 F.3d 36 (4th Cir. 1995) ..............................................................................37

*Judd v. Rodman*,
  105 F.3d 1339 (11th Cir. 1997) ......................................................................19

*Kalman v. Bertacchi*,
  57 Ill. App. 3d 542, 15 Ill. Dec. 204, 373 N.E.2d 550 (1978)........................22

*Lester v. TMG, Inc.*,
  896 F. Supp. 2d 482 (E.D. Va. 2012).............................................................18

*Litzenberg v. Litzenberg*,
  307 Md. 408, 514 A.2d 476 (Md. 1986)..........................................................21

*LoneStar Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
  43 F.3d 922 (4th Cir. 1995) ............................................................... 35

*Mobile America Housing Corp. v. Schroder*,
  1995 Tex. App. LEXIS 1938, 1995 WL 489172 (Tex. App. Houston
  1st Dist. Aug. 17, 1995) ............................................................... 13

*Nargi v. Camac Corp.*,
  820 F. Supp. 253 (W.D. Va. 1992) ............................................... 23

*Pair v. Rook*,
  195 Va. 196, 77 S.E.2d 395 (1953) ............................................. 24

*Powers v. Hastings*, 20 Wash. App.
  837, 582 P.2d 897 (1978), *aff'd*, 93 Wash. 2d 709, 612 P.2d 371 (1980) ....... 22

*Reynolds v. Dixon*,
  187 Va. 101, 46 S.E.2d 6 (1948) ................................................. 22

*Sealock v. Hackley*,
  186 Md. 49, 45 A.2d 744 (1946) ................................................. 22

*Silverman v. Bernot*,
  218 Va. 650 (1977) ............................................................... 12, 13

*Silverman v. Bernot*,
  239 S.E.2d 118 (VA, 1977) ........................................................ 10

*Simms v. Mutual Benefit Ins. Co.*,
  137 Fed. Appx. 594 (4th Cir. 2005) ............................................. 17

*Smith v. Payne*,
  153 Va.746 (Va.1929) ............................................................ 12-13

*T v. T* ,
  216 Va. 867, 224 S.E.2d 148 (Va. 1976) ................................... 23, 24

*Timberlake v. Heflin*,
  180 W. Va. 644, 379 S.E.2d 149 (1989) ...................................... 21

iv

*Trossbach v. Trossbach*,
185 Md. 47, 42 A.2d 905 (Md. 1945)..............................................................21

*Troyer v. Troyer*,
231 Va. 90, 341 S.E.2d 182 (1986) ...........................................................21, 22

*Turner v. United States*,
736 F.3d 274 (4th Cir. 2013) ........................................................................31

*Warner v. Texas and Pacific Railway Co.*,
164 U.S. 418, 17 S. Ct. 147, 41 L. Ed. 495 (1896) .........................................15

*Wells v. Shriners Hospital*,
109 F.3d 198 (4th Cir. 1997) ...................................................................11, 27

*Wemhoff v. Investors Management Corp. of America*,
528 A.2d 1205 (D.C. App. 1987) ............................................................. 21-22

*Wolf v. Crosby*,
377 A.2d 22 (Del. Ch. 1977) .........................................................................22

*Zlotziver v. Zlotziver*,
355 Pa. 299, 49 A.2d 779 (1946)...................................................................22

## STATUTES & RULES

28 U.S.C.A. § 636(b)(1)...........................................................................11, 27

Fed. R. Civ. P. 8 (c)......................................................................................17
Fed. R. Civ. P. 50......................................................................................9, 19
Fed. R. Civ. P. 52(a)(6)................................................................................26
Fed. R. Civ. P. 72(a)..............................................................6, 8, 11, 27, 34, 36
Fed. R. Evid. 103 (a)....................................................................................20

## PRELIMINARY STATEMENT

Following a three-day jury trial and post-trial motions, judgment was entered in favor of Mahmoud Riad Mahmoud ("Riad") against Nasser Aqeel Al Tayyar ("Al Tayyar") in the amount of Six Hundred Sixty One Thousand Dollars ($661,000.00). Judgment was entered in favor of Plaintiff Blue Sky Travel and Tours, LLC ("Blue Sky") against the Al Tayyar Group ("ATG") in the amount of Eleven Million Nine Hundred Forty Thousand Fifty Dollars and Eighty Nine Cents ($11,940,050.89). Judgments were awarded on separate oral contracts. The judgment obtained by Riad in the amount of $661,000.00 is not challenged in either the Docketing Statement or in the Brief of the "Defendants". At times, in Defendants' Brief, "Defendants" (the plural form) is used, when, in fact, the arguments apply only to the singular Defendant, ATG.

The judgment against ATG is on an oral contract, which ATG admits entering into to the extent that it obligated ATG to pay for the cost of goods sold, plus a service fee. The Jury was properly instructed without objection, found that Blue Sky substantially performed on the oral contract, and awarded Blue Sky costs and fees of $1,940,050.89. That award is not challenged by ATG on appeal. The Jury also found that the contract included a provision to split profits. ATG complains only of the awarding of profits to Blue Sky in the amount of $10 Million by the District Court.

1

In its Appeal, ATG seeks to reverse the adverse judgment for profits by re-litigating the discovery issues decided against it for which it was sanctioned and for which it waived objections.  ATG also challenges the District Court's well reasoned decision that the contract was not subject to Virginia's Statute of Frauds.

## JURISDICTIONAL STATEMENT

Blue Sky and Riad agree with the Appellant's jurisdictional statement.

## ISSUES PRESENTED

Blue Sky disagrees with ATG's presentation of the issues. The issues, as framed, are argumentative, assume facts which are not fairly presented by the record, and apply standards not adopted by the Court. The issues presented should be more properly framed:

1.      Whether the District Court erred in finding that the oral contract between Blue Sky and ATG was not within the Virginia Statute of Frauds; and

2.      Whether the District Court abused its discretion in entering judgment that Blue Sky's share of profits was Ten Million Dollars ($10,000,000.00).

<u>STATEMENT OF CASE</u>

A.    STATEMENT OF FACTS

ATG's Statement of Facts is, at times overstated, incomplete, or misstates the record. The entire contract between Blue Sky and ATG was that Blue Sky would purchase airline tickets for Saudi students based on government requests for the purchase of airline tickets made by the Ministry of Higher Education for the Kingdom of Saudi Arabia (the "Ministry"). Blue Sky would be reimbursed for the purchase price, be paid a One Hundred Dollar ($100.00) per ticket service fee, and according to Blue Sky, would receive at the end of the year fifty per-cent (50%) of the profits on ATG's resale of the tickets to the Ministry. JA829-30. The contract contained no other terms. The Jury determined that Blue Sky substantially performed all of its obligations under the contract and that ATG breached its obligations under the contract. JA1245. During the trial, Blue Sky established that it was damaged in the amount of $1,940,050.89 as a result of ATG's breach of the contract. JA1245. The Jury found that there was a contract between Blue Sky and ATG to split profits earned from ATG's resale of those tickets purchased by Blue Sky which were resold to the Ministry. JA1246. The District Court awarded Blue Sky Ten Million Dollars as its share of profits. The Jury awarded Riad $661,000.00 as a result of Al Tayyar's breach of his contract with Riad to pay for the closing of Riad's prior business. JA1246.

3

The contract did not require Blue Sky to "service those tickets (including any necessary changes or cancellation)" as argued in ATG's Brief. (Appellant's Brief p. 4). ATG does not and cannot cite to the record to support its argument that "servicing" of the tickets was a term of the contract despite making this claim multiple times on Brief.

ATG further misstates the record, stating that "Blue Sky, LLC <u>made</u> over $850,000.00 on the One Hundred Dollar service fee" (emphasis added). ATG references JA843, which actually states that "Blue Sky ultimately billed ATG about $850,000.00 in service fees." JA843. The amounts were not delineated, but ultimately the Jury found that Blue Sky was not paid the $1,940,050.89 which it was owed for unpaid invoices reflecting both the cost of goods sold and service fees. JA1245. ATG's insinuation was that Blue Sky made a profit. In fact, Blue Sky made no money, and would have made no money, had it been completely paid for the cost of goods plus service fees for all the tickets purchased. JA829.

ATG claims the record shows Blue Sky received no more ticket requests after the beginning of July, based on "disputes between the parties over the documentation of the ticket purchases". There is no citation to the page supporting that claim, and Riad disputed that the ticket requests were stopped because of a dispute over documentation. JA846-48.

4

Other ATG references to the Appendix are inaccurate. ATG references JA828 in support of its claim that ATG would invoice the Ministry. Riad's testimony was actually that "ATG would resell the tickets to the Ministry at a profit." JA828. ATG references Blue Sky's Counsel's opening statement at JA798, and argument on a motion at JA1012 as facts. ATG claims that Joint Appendix References 869 through 870 and 874 through 877 support that "there was no writing of any kind memorializing the agreement." (Appellant's Brief p.5). The actual testimony was that there was no letter or writing, "just the e-mails we have," which Riad testified established the existence of the oral contract. JA874.

## B.    PROCEDURAL HISTORY

The procedural history, as stated by ATG in its Brief at pages 5 through 25, is, in fact, argument. It is an attempt to re-litigate rulings by the Magistrate Judge to which ATG made no proper objections. A more concise and accurate procedural history, absent argument, follows:

Plaintiffs' Complaint was filed on October 12, 2012.  JA4.  Plaintiffs' Amended Complaint was filed June 19, 2013.  JA67.  Defendants' Answer to the Amended Complaint was filed on July 3, 2013.  JA133.  Defendants' Amended Answer (Paragraph 17) admits the existence of the oral contract between ATG and Blue Sky.  JA138.

Discovery disputes occurred and Blue Sky filed a Motion and Memorandum to Compel Discovery. JA86-92. The Motion was granted by Order of Magistrate Judge on July 12, 2013. JA214. No Rule 72(a) exception was taken. Responses to the Discovery were to be produced by July 26, 2013. On July 26, 2013, ATG filed a "Report" instead of filing the ordered responses to Discovery. JA220-28. On the same day, Blue Sky filed a Motion and Memorandum for Sanctions. JA261-66. A hearing was held on the Motion for Sanctions on August 2, 2013, and an Order was entered on that same day denying the Motion for Sanctions without prejudice, and giving ATG until August 16, 2013 to produce the ordered documents. JA374. No exception was made pursuant to Rule 72(a). ATG then filed a Motion for Extension of time to provide the discovery on August 5, 2013. A hearing on this motion took place before the Magistrate Judge on August 16, 2013, and an Order was entered granting the motion in part and denying it in part and allowing ATG until August 21, 2013 to respond to the discovery request. JA448. The Order put Defendants on notice that they would face sanctions for failing to respond. No Rule 72(a) exceptions were filed.

On August 23, 2013, Blue Sky filed a renewed Motion and Memorandum for Sanctions. JA446-56. A hearing was held before the Magistrate Judge on August 30, 2013, with an Order entered by the Magistrate Judge on that date. JA558-59. The Magistrate Judge granted the Motion for Sanctions in part, and

6

denied it in part. The Magistrate Judge found that ATG "has violated the Court's August 2, 2013 Order, which required Defendant to produce all invoices to Defendant." ATG was ordered to produce all of the actual invoices by September 4, 2013. The Court also ordered the Defendant pay Blue Sky's attorneys' fees for the cost and filing of the motion, a $50,000.00 fine payable to the Clerk of the United States District Court, and ruled that ATG would be "precluded from producing any evidence or arguing in a Motion for Summary Judgment or at Trial that Defendant, Al Tayyar Group, makes only a 5 percent markup for all vendors." JA558. It also put ATG on notice of default if it failed to comply. No Rule 72(a) exceptions were filed, although ATG did file a motion for the Magistrate Judge to reconsider the $50,000 fine.

Blue Sky filed a Motion for Default Judgment against ATG for failing to comply with the Court's August 30, 2013 Order. The Motion and Memorandum were filed on September 13, 2013. JA560-65. The Reconsideration and Default Motions were heard by the Magistrate Judge on September 13, 2013. The Court entered two orders on that day, denying ATG's Motion for limited reconsideration of sanctions JA633; and granting Blue Sky's motion for default in part and denying it in part. JA634. The Order directed that the jury would be instructed "that it may presume that the profits made on Blue Sky Travel and Tours' ticket sales to the Al

7

Tayyar Group and resold to the Saudi Ministry of Higher Education were 20 Million Dollars." JA634.

The Defendants thereafter filed their first Rule 72(a) exceptions on September 16, 2013 to the two September 13, 2013 Orders. Specifically, ATG's Rule 72(a) exceptions were only as to the award of the $50,000.00 fine and the presumptive Jury Instruction. JA635-45. The District Court heard the exceptions to the Magistrate Judge's rulings pursuant to Rule 72(a) on September 20, 2013. Thereafter, the District Court issued an Order on September 20, 2013, denying ATG's Rule 72(a) exception, affirming the Magistrate Judge's decision with respect to the profits presumption, and otherwise took the motion as to the fine under advisement. JA748-49. The District Court's Order speaks only to the sanctions as a discovery sanction, and makes no reference to spoliation.

This case was called to Trial on September 23, 2013. Prior to the empanelment of the Jury, ATG made a motion that the Jury would only determine whether or not there was an oral contract to split profits between ATG and Blue Sky, and the Court, sitting as finder of fact, would then determine the appropriate amount of judgment. The District Court, without objection from either party, ruled that the Court would decide the issue of damages, and whether it would consider additional evidence at the conclusion of the jury trial, or whether it would decide

the issue based upon the presumption ordered in the Magistrate Judge's ruling and affirmed by the District Court.  JA763-64.

At the conclusion of the Plaintiffs' case, the Defendants argued a Motion for Judgment as a Matter of Law under Rule 50.  JA996-1025.  The District Court denied the motion at the time and allowed the Defendants to renew it at the filing of verdict.  JA1023-25.  The Defendants put on their evidence and rested.  Blue Sky put on rebuttal evidence, and the Court instructed the Jury.  After closing arguments, the Jury retired to its deliberations, and reached its verdicts in favor of the Plaintiffs on all issues.  JA1245-46.

On September 26, 2013, the District Court convened a hearing on the issue of damages "that was by agreement submitted to the Court for determination following the Jury's verdict." JA1249.  Prior to the hearing, ATG filed a written proffer of evidence it would offer on the issue of damages.  At the hearing, ATG orally supplemented the proffer. The Court also heard argument on the Rule 50 motion.   The Court took the matters under advisement until issuing its Memorandum Opinion on October 21, 2013.  JA1307-14.

The Memorandum Opinion addressed the issue of damages, and the Rule 50 Motion based on the Statute of Frauds. The District Court found that "Blue Sky sustained damages in the amount of $10 million as a result of defendant ATG's breach of the profit sharing portion of the contract alleged in Count I."  JA1308.

9

The Court found that Ten Million Dollars was a fair and reasonable estimate of the profits that Blue Sky would have received. The Court denied the Rule 50 Motion, ruling that the contract did not come under the Statute of Frauds. The Court then entered an Order on October 21, 2013, granting ATG's Rule 72(a) exception to the extent of the $50,000.00 fine that had been imposed by the Magistrate Judge. JA1315-17. On that same day, the Court entered an Order denying the Rule 50 Motion, denying the Motion for Limited Reconsideration, and ordering judgment in favor of Plaintiff Blue Sky in the amount of Eleven Million Nine Hundred Forty Thousand Fifty Dollars and Eighty Nine Cents ($11,940,050.89) and in favor of Riad in the amount of Six Hundred Sixty One Thousand Dollars ($661,000.00). JA1318-19.

Subsequently, the Defendants filed Rule 59 Motions, accompanied by multiple Briefs and a renewed Rule 50 Motion, both of which were denied by the District Court on November 15, 2013. JA1393.

## SUMMARY OF ARGUMENT

ATG raises two issues on Appeal. It argues that the Agreement entered into by ATG and Blue Sky was not capable of being fully performed within one year. The District Court, however, found that the contract could have been performed by at least one of the two parties within one year, and thus fell outside of the Statute of Frauds. *Silverman v. Bernot,* 239 SE 2nd 118 (VA, 1977). Moreover, ATG

10

waived its argument for the application of the Statute of Frauds and cannot assert it on appeal.

The Court need not reach ATG's second issue regarding sanctions as the District Court "[found] and concluded that ATG realized, or would have realized, absent its breach of the profit sharing agreement, $20 million in profits on the resale of tickets purchased by Blue Sky to the Ministry. JA1313-14. No error has been assigned to the District Court's finding as the trier of fact on the issue of damages.

ATG's second issue is whether the District Court properly confirmed the Magistrate Judge's discovery sanctions. ATG argues that the Magistrate Judge made erroneous decisions, ultimately resulting in a jury instruction that would have informed the Jury that they <u>may</u> presume that the profits from the sale of the Blue Sky tickets was Twenty Million Dollars ($20,000,000.00). The Magistrate Judge's order was based on ATG's noncompliance with a series of prior discovery Orders. Those Orders were not excepted to under Rule 72(a), and cannot be raised on Appeal. 28 U.S.C.A. § 636(b)(1); Fed. R. Civ. P. 72(a); *see Wells v. Shriners Hosp.*, 109 F.3d 198 (4th Cir. 1997).

The Order to which ATG did except under Rule 72(a) was reviewed by the District Court. The District Court ruled that, based on the pattern of discovery abuse, the presumptive jury instruction sanction was appropriate. The District

11

Court ruled that the Magistrate Judge did not abuse his discretion with respect to the presumption, but nonetheless afforded ATG an opportunity to proffer admissible evidence to rebut the presumption or otherwise disprove the Twenty Million Dollar figure. The District Court properly excluded the proffered evidence, and ultimately found damages for Blue Sky in the amount of Ten Million Dollars as its fifty per-cent (50%) share of profits as a matter of fact.

## ARGUMENT

I.    THE CONTRACT IS NOT SUBJECT TO THE VIRGINIA STATUTE OF FRAUDS

### A. Contracts Which Can Be Performed By One Party Within A Year Are Not Subject To the Virginia's Statute Of Frauds

The Statute of Frauds is not applicable to the oral contract between Blue Sky and ATG since Blue Sky could have fully performed its obligations under the contract within a year.  If, under any possibility, the contract could have been performed by either one of the parties, regardless of when it actually was performed, the Statute of Frauds is not applicable. The Statute of Frauds is only applicable where *both parties* are unable to fully perform their contractual obligations within a year. *See Silverman v. Bernot*, 218 Va. 650, 654 (1977) ("But when by its terms, or by reasonable construction, such a contract can be fully performed *on one side* within a year ... the contract is not within the statute and need not be in writing.") (emphasis added); *see also Smith v. Payne*, 153 Va.746,

12

758 (Va.1929)(An agreement is governed by the Statute of Frauds only if the agreement "contemplate[s] nonperformance by both parties within a year.")

In *Silverman*, the Plaintiff asserted that she entered into an oral employment agreement for a period of time extending until either she reached the age of 62 or until the Defendant died. *Silverman v. Bernot,* 218 Va. at 651.  For ten (10) years following the oral employment agreement the Plaintiff was employed on and off by the Defendant.  *Id.* at 652-53.  The court did not consider the actual length of time that the Plaintiff performed but only whether the contract "could be fully performed on either side within a year from the making thereof."  *Id.* at 654. Although the relationship lasted longer than a year, the Court concluded that the Statute of Frauds was not applicable because the Defendant could have died within a year, and the Plaintiff would have fully performed her obligations within the year. *Id.* at 655.

As stated in *Silverman,* the analysis of whether a contract falls within the Statute of Frauds begins with a determination of whether the contract could have been preformed within a year of its making and not a retrospective determination of whether the contract was actually performed within a year.  *Id.* S*ee also, Mobile Am. Hous. Corp. v. Schroder*, 1995 Tex. App. LEXIS 1938, *11-12, 1995 WL 489172 (Tex. App. Houston 1st Dist. Aug. 17, 1995) ("Here, although the relationship lasted longer than a year, the parties could have performed the contract

within a year by terminating it. Therefore, the claims arising from the alleged oral contract were not barred by the statute of frauds.")  Counsel for ATG conceded that the Statute of Frauds analysis is based upon a hypothetical and not the actual evidence presented during trial.  JA1021.  The critical question in this case was whether Blue Sky could have performed within a year of entering into the contract and not whether the evidence at trial established that the contract performance extended beyond a year.

Yousef Elsawalhi, an employee of Blue Sky, testified that the oral contract between Blue Sky and ATG required Blue Sky to purchase tickets at the request of ATG for so long as ATG required.  JA994.  The length of the contract nor the number of tickets to be purchased by Blue Sky were not terms of the contract.  Al Tayyar testified that ATG was free to stop the purchase of tickets at any point without breaching the agreement.  JA1132; JA1269-70.  One ticket request could have been made within a year of the June, 2011 initial contract date (it did, in fact place orders within the year).  Blue Sky could have purchased the ticket within the year, invoiced ATG for the ticket within the year, and awaited ATG to perform by paying the agreed compensation.  Blue Sky could have never received another ticket request.  Since ATG was free to stop ordering tickets from Blue Sky at any point, Blue Sky could have fully performed through the purchase of all of the

14

ordered tickets within a year of entering into the contract and the Statute of Frauds is inapplicable.

The District Court found that the contract between Blue Sky and ATG was contingent on the ordering of tickets by ATG and that contingency took the contract out of the Statute of Frauds. The United States Supreme Court held that "[w]here the agreement is to be performed upon a contingent, and it does not appear within the agreement, that it is to be performed after the year, then a note in writing is not necessary, for the contingent might happen within the year." *Warner v. Texas and Pacific Railway Co*., 164 U.S. 418, 421-22, 17 S. Ct. 147, 41 L.Ed. 495 (1896). ATG conceded it was under no commitment to continue to purchase tickets from Blue Sky when counsel confirmed that ATG would not be in breach of its contract with Blue Sky by suspending or terminating the relationship. JA1269-70. The uncontroverted testimony was that ATG had the power to cease purchasing tickets from Blue Sky at any point. Since ATG could have ceased purchasing tickets from Blue Sky at any point, Blue Sky could have fully performed within the year and would be entitled to fifty percent (50%) of the profits earned by ATG on those tickets purchased to that point by Blue Sky.

To avoid the clear rule of law as to why the Statute of Frauds does not apply to this contract, ATG repeatedly states in its Brief that the contract required Blue Sky to "service" the tickets until all tickets had been used. There is no testimony

15

supporting that contention.  ATG points to the testimony of Sherin Nour that Blue Sky continued to make exchanges of tickets and the testimony of Riad that the business was kept open until January 18, 2013 until the last tickets was used, as the evidence that the contract contained this alleged requirement.  What Blue Sky might have done is not proof that the contract required it.  ATG offered no evidence, let alone proof that the contract contained the "service" term.  The record shows otherwise.  Further, Riad in fact testified that ATG could have serviced the tickets itself as it had access to the Sabre system and the Airlines Reporting Corporation's purchasing system until January 18, 2013.  JA841.

This case is readily distinguished from *Albanese v. WCI Cmty, Inc.,* 530 F. Supp.2d 752 (E.D. Va. 2007), which is not binding precedent on this Court.  The Court in *Albanese* found that the Statute of Frauds applied to the oral promise of a bonus because neither party could have fully preformed within a year of making the agreement.  *Id.* at 765.  In *Albanese*, the Plaintiff had to remain employed in order to be eligible to receive a bonus.  Since the Plaintiff had to remain gainfully employed with the Defendant for more than eighteen (18) months and the bonus could not be determined until eighteen (18) months after the contract was formed, the contract fell within the Statute of Frauds. *Id.* at 768 ("Mr. Albanese asserts that he fully performed his part of the agreement by working for WCI throughout 2005.")  Unlike either party in *Albanese,* Blue Sky could have fully performed and

16

be entitled to its share of profits made on its tickets by purchasing, delivering, and invoicing the tickets, all of which could have been done within a year.  ATG would then have to perform by paying the profit split when profit was determined by it at the end of the year.

> **B.    The District Court Properly Placed The Burden Of Proving The Application Of The Statute of Frauds On ATG.**

The District Court applied the correct burden of proof in holding that ATG failed to make its initial *prima facie* case that the Statute of Frauds applied to this contract.  The Statute of Frauds is an affirmative defense.  Fed. R. Civ. P. 8 (c).  The burden of proof for a party alleging fraud, whether as a common law defense or a contractual defense, is clear and convincing evidence.  *Simms v. Mutual Benefit Ins. Co.*, 137 Fed. Appx. 594, 600 (4th Cir. 2005).  The District Court rightly concluded that ATG, as the party alleging the Statute of Frauds as an affirmative defense, had the burden of proving that the contract fell under the Statute of Frauds.

Blue Sky and ATG agree that they entered into an oral contract for the purchase of tickets and that ATG would reimburse Blue Sky its actual costs plus a service fee of $100 per ticket.  JA1218.  The element of the contract in dispute is the agreement to split profits.  The Jury found that there was such an agreement.  JA1245.  The District Court correctly concluded that ATG had not met is burden of

proof on the affirmative defense of Statute of Frauds because it failed to produce any evidence which overcame the contingent nature of the contract.

The contingent nature of the contract between ATG and Blue Sky is analogous to an at-will contract. Both in the at-will contract and the contract between Blue Sky and ATG, there is no requirement that the parties continue their relationship for any period of time. As stated persuasively in *Agbey v. Dalloul*, 41 Va. Cir 3, *13 (1996), simply because a contract is indefinite does not subject it to the Statute of Frauds. In situations where the exact term of the obligation of one of the parties is indefinite, it can be easily contemplated that the contract could be fully performed by either side at any time and the contract is not within the Statute of Frauds. *Lester v. TMG, Inc.*, 896 F. Supp. 2d 482, 485-86; (E.D. Va. 2012) ("Virginia law establishes that at-will employment contracts are not within the Statute of Frauds."). In this case, the District Court correctly evaluated the terms of the contract and found a contingency "even were there profits to share, such that ATG could not complete its performance until after the end of 2012, Blue Sky might have completely performed all of its duties within a year in order to receive its share of those profits." JA1310-11 at n.3. The existence of that contingency took the contract out of the Statute of Frauds and ATG was unable to meet its initial burden as required by Virginia law.

18

C.    No Timely Objection Was Made To The Testimony of Mahmoud
       Riad To Preserve The Statute of Frauds Defense

By failing to object to the testimony of Riad establishing the contract
between Blue Sky and ATG to purchase airline tickets and split the profits earned
from the resale of those tickets, ATG waived its Statute of Frauds defense.
JA828[1]; JA832; JA862.  In *Eaves v. Vial*, 34 S.E. 978 (1900), cited by ATG, the
Virginia Supreme Court held that the defendant waived her Statute of Frauds
defense when she failed to object to the testimony of the plaintiff which proved the
existence of the oral contract.  *Id.* at 980.  The Court concluded that a "general
denial will put the plaintiff to the proof of the agreement, and, if it be within the
Statute of Frauds, he must produce a writing at the trial or hearing *unless the
defendant waives his right to require it by allowing the agreement to be proved by
oral testimony*."  *Id.* at 980. (emphasis added.)  By failing to contemporaneously
object to the Riad's testimony, ATG did not properly preserve its claim of error on
the Statute of Frauds issue.

ATG raised its Statute of Frauds defense at the conclusion of Blue Sky's
case on a Motion for Judgment as a Matter of Law pursuant to Rule 50 of the
Federal Rules of Civil Procedure.  JA996.  A Motion for Judgment as a Matter of

---

[1] While an objection appears in close proximity to Riad's testimony, the objection
was based upon the form of the question and not the substance of the testimony.
"[A]n objection on specific grounds does not preserve the error for purposes of
appeal on other grounds." *Judd v. Rodman*, 105 F.3d 1339, 1342 (11th Cir. 1997)

19

Law is not the appropriate time to object to evidence, as it challenges only the sufficiency of the evidence.  Shortly before the closing of Blue Sky's case, the District Court was under the impression that ATG was not proceeding under a Statute of Frauds defense since it had not previously been raised.  JA990.  In response to the Court's inquiry, counsel for the Defendants stated that "I think we would be making a motion for judgment as a matter of law on [the statute of frauds] issue based on what the plaintiff has been able to produced before the Court."  JA990.  However, the motion did not come until after Blue Sky completed its case.  JA997.  *See* Fed. R. Evid. 103 (a)("Error may not be predicated on a ruling that admits . . . evidence . . . unless . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.").  Since ATG made no objection to the proof of the existence of the oral contract when the witnesses were examined and it was readily admitted that an oral contract existed, ATG waived its Statute of Frauds defense.

> D.     The Admission That An Oral Contract Existed Precludes the Al Tayyar Group From Raising The Statute of Frauds As a Defense

ATG has judicially admitted the contract between Blue Sky and ATG.  JA138 ("Defendant admits that ATG entered into a contract for services with Blue Sky, and Blue Sky was to purchase tickets for the Ministry of Higher Education's Saudi students."); JA1218 ("The parties are in agreement that Plaintiff Blue Sky

and Defendant ATG entered into an oral contract for Plaintiff Blue Sky to be reimbursed by Defendant ATG for the tickets Blue Sky purchased, plus a service fee of $100 per ticket.")  A judicial admission of a contract removes the contract from the Statute of Frauds.  *See e.g., Troyer v. Troyer*, 231 Va. 90, 95, 341 S.E.2d 182, 185 (1986)(The admission of a contract during a deposition took the contract out of the Statute of Frauds because it was a statements against the defendant's interest and was to be given great weight.)  *See also, Fedder Dev. Corp. v. FB Hagerstown, LLC*, 181 Fed. Appx. 384, 387 (4th Cir. Md. 2006) ("[A]n oral contract otherwise barred by the statute of frauds can still bind a party if the party admits its existence with 'sworn testimony in court or on deposition, or in an answer to a complaint.'") *citing Litzenberg v. Litzenberg*, 307 Md. 408, 514 A.2d 476, 479 (Md. 1986); *see also Trossbach v. Trossbach*, 185 Md. 47, 42 A.2d 905, 908 (Md. 1945) ("Admissions of a party in testifying, though in form evidence, are in essence not mere evidence, but make evidence against him unnecessary. We think the Statute of Frauds requires no more.")  *Timberlake v. Heflin*, 180 W.Va. 644, 648, 379 S.E.2d 149 (1989) ("We, along with other courts, have recognized that a pleading may, in appropriate circumstances, be sufficient to take a parol contract out of the Statute of Frauds. In a related line of cases, representative of the modern trend, courts have crafted a "judicial admission" exception to the statute of frauds.") *citing Wemhoff v. Investors Management Corp. of America*, 528 A.2d

21

1205 (D.C. App. 1987); *Wolf v. Crosby*, 377 A.2d 22 (Del. Ch. 1977); *Kalman v. Bertacchi*, 57 Ill. App. 3d 542, 15 Ill. Dec. 204, 373 N.E.2d 550 (1978); *Sealock v. Hackley*, 186 Md. 49, 45 A.2d 744 (1946); *Zlotziver* v. *Zlotziver* 355 Pa. 299, 49 A.2d 779 (1946); *Adams-Riker, Inc. v. Nightingale*, 119 R.I. 862, 383 A.2d 1042 (1978); *Powers v. Hastings*, 20 Wash. App. 837, 582 P.2d 897 (1978), *aff'd*, 93 Wash. 2d 709, 612 P.2d 371 (1980). These cases hold that the Statute of Frauds defense is waived by the admission of a contract made in the course of judicial proceedings. With the admission that a contracted existed, ATG was precluded from relying upon the Statute of Frauds as a defense to this action.

> E.     The Application Of The Statute Of Frauds In This Case Would Violate The Rationale Of The Rule

The Virginia Supreme Court has concluded that "the statute [of frauds] was founded in wisdom and sound policy. Its primary object was to prevent the setting up of pretended agreements and then supporting them by perjury…. It was not intended that the statute should perpetrate frauds." *Reynolds v. Dixon*, 187 Va. 101, 106, 46 S.E.2d 6 (1948). Since the object of the Statute of Frauds is to prevent fraud, "it will not be applied when to do so would result in a fraud or perpetrate a wrong." *Troyer v. Troyer*, 231 Va. 90, 94, 341 S.E.2d 182 (1986). ATG admitted in its interrogatory responses that such a contract existed and that Blue Sky had performed and properly substantiated over $17,000,000 worth of tickets. JA1088. It was proven at trial that Blue Sky was entitled to an additional

$1,940,050.89 as a result of its performance on an oral contract.  JA1245.  This Court must not allow ATG to deny the existence of the only profitable aspect of the same oral agreement.  Such a decision would allow the Statute of Frauds to be used as a sword rather than a shield and enable ATG to perpetrate its own fraud against Blue Sky in direct contradiction to the stated intention of the Virginia Supreme Court in a multitude of opinions.

> F.    Equitable Estoppel And Part Performance Remove The Contract From The Statute of Limitations

The District Court did not decide issues of equitable estoppel and part performance.  JA1311. These issues would require consideration if this Court finds error in the District Court's ruling that the Statute of Frauds is inapplicable.  There is no question that Blue Sky established the necessary elements of equitable estoppel.  "To establish equitable estoppel in Virginia, it is not necessary to show actual fraud, but only that the person to be estopped has misled another, to his prejudice . . . or that the innocent party acted in reliance upon the conduct or misstatement by the person to be estopped." *Nargi v. Camac Corp*. 820 F.Supp. 253, 256 (W.D. Va. 1992) *citing T... v. T...*, 216 Va. 867, 224 S.E.2d 148, 152 (Va. 1976).  Riad relied upon the representations of Al Tayyar that ATG would split the profits on the tickets purchased by Blue Sky.  Al Tayyar made this representation while acting in his position as President of ATG.  Riad created Blue Sky based upon these representations.  Blue Sky took on obligations such as

employees, debt and contracts as a result of these representation.  Blue Sky was not able to fulfill all of the obligations it took on because of ATG's breach and refusal to split profits.

Equitable estoppel, though not relied upon by the District Court would take this contract out of the Statute of Frauds.  The Virginia Supreme Court in *T...v. T...*, 216 Va. 867, 224 S.E. 2d 148, 151 (Va. 1976), held that "under certain conditions, where there has been part performance, a court of equity will avoid the statute [of frauds] and enforce an oral agreement." *T...v. T...*, 224 S.E. 2d at 151. Blue Sky properly established evidence sufficient to satisfy the two "conditions" required under *T ...v. T* ... which are (1) that the oral agreement is "certain and definite," and (2) that the part performance is so extensive that refusal to honor the oral agreement "would operate as fraud upon the party." *T...v. T...*, 224 S.E. 2d at 151.  The admission by ATG that the contract existed creates certainty.  The exchange of over $16,000,000 certainly establishes extensive part performance by both ATG and Blue Sky.

Part performance alone also removes this contract from the Statute of Frauds.  "'Acts of part performance by the party seeking specific execution, to take a case out of the statute [of frauds], must be of such an unequivocal nature as of themselves to be evidence of the existence of an [oral] agreement . . . .'" *Pair v. Rook*, 195 Va. 196, 206, 77 S.E.2d 395 (1953) (*quoting Hale v. Hale*, 90 Va. 728,

24

732, 19 S.E. 739 (1894)).  ATG cannot deny part performance of this contract; it admitted as much in its Amended Answer, sworn answers to Interrogatories and during various arguments before the District Court.   The doctrine of part performance, once sufficiently alleged so as to "imply the existence of some contract," parol evidence to show the terms of the contract relied on is admissible. *Hale v. Hale*, 90 Va. at 733-74.  Given that ATG has admitted that a contract exists, that Blue Sky purchased over $17,000,000 worth of tickets and received payment on $16,200,000 from ATG, Blue Sky has properly proven facts which imply the existence of a contract.  The District Court properly allowed parol evidence to establish the existence of a contract and a new trial is not warranted.

II.    THE DISTRICT COURT CORRECTLY AWARDED BLUE SKY $10 MILLION IN DAMAGES FOR ITS SHARE OF PROFITS

Although the Magistrate Judge provided that the trier of fact may presume that ATG made $20 million in profit from the resale of the tickets purchased by Blue Sky, the District Court concluded that the record fairly established $20 million as the contractual amount of profits earned.

On ATG's motion, the District Court ruled that it would decide the issue of damages as to Blue Sky's share of profits if the Jury found that the contract included that term.  JA761-63. The Jury found that there was a contract to split

25

profits and, accordingly, the District Court as the trier of fact found Blue Sky's damages to be fifty percent (50%) of the profits earned: $10 million.

ATG does not assign any error to the District Court's verdict as trier of fact. "Failure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues." *Igen Int'l, Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303, 308 (4th Cir. 2003). Moreover, the District Court decision was not plainly wrong based on the evidence. At a hearing on September 26, 2013, following the Jury's verdict, the District Court considered written and oral proffers of evidence by ATG on the issue of damages. The District Court concluded that "all of the defendant's relied upon evidence in support of its position on damages has either already been presented at trial or would be inadmissible..." JA1312. The District Court reviewed the pleadings, discovery and proffers that ATG did provide and concluded that $20 million represented a fair and reasonable estimate of the total profits and that as a matter of fact, Blue Sky[2] had been damaged "in the amount of $10 million, representing its 50% share of those profits it was entitled to receive under the profit sharing portion of the contract in Count 1." JA1314.

Having considered the evidence, proffers and argument, the District Court's finding and conclusions, if reviewable at all, are entitled to great weight and must be affirmed. Fed. R. Civ. P. 52(a)(6) ("Finding of fact, whether based on oral or

---

[2] The Memorandum Opinion contains a misreference to ATG's damages when referring to Blue Sky.

other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.")

## III.    THE DISTRICT COURT CORRECTLY AFFIRMED THE MAGISTRATE JUDGE'S DISCOVERY SANCTION

### A.    ATG Waived Objections Under Rule 72(a) Of The Federal Rules Of Civil Procedure

ATG, in its Brief, sets out a 17-page argument under the guise of "unavoidably detailed" additional procedural history related to each decision rendered by the Magistrate Judge.  The procedural history is nothing more than an improper attempt by ATG to re-litigate issues that were decided by the Magistrate Judge and not excepted to under Rule 72(a) by ATG, such as: the relevance of the documents ordered to be produced; the manner of the discovery requests; and the authenticity of the documents produced.  Since ATG failed to note any objections under Rule 72(a) to the Magistrate Judge's prior rulings, ATG waived any appellate review of those rulings. 28 U.S.C.A. § 636(b)(1); Fed. R. Civ. P. 72(a); *see Wells v. Shriners Hosp.*, 109 F.3d 198, 199, 201 (4th Cir. 1997) (Holding that a party waives appellate review of matters not properly objected to under Rule 72.)  While Blue Sky takes exception to the arguments and does not agree with much of what is contained in Sections 1-11 of ATG's "Procedural History", it is not necessary to

27

detail the numerous misstatements, improper conclusions, and factual omissions for the simple reason that no Rule 72 exceptions were made to any of these rulings.

After the extraneous issues which are not subject to appellate review are removed, ATG's argument is that it should not have been sanctioned for its failure to produce relevant documents which the Magistrate Judge ordered to be produced. The Magistrate Judge determined that the requested invoices were relevant to Blue Sky's case to which no Rule 72 exception was taken. The Magistrate Judge ordered those documents to be produced and no Rule 72 exception was taken. The Magistrate Judge sanctioned ATG, first by precluding certain arguments and no Rule 72 exception was taken. The Magistrate Judge sanctioned ATG a second time by drafting a presumption jury instruction for not producing relevant documents which it deemed a violation of a prior court order. Upon review, the District Court affirmed the determination that the documents were relevant and the lack of production was prejudicial to Blue Sky's case. JA748-49; JA1311. Since no Rule 72 exception was filed by ATG, the Magistrate Judge's rulings that the documents were relevant and had to be produced is unassailable. Likewise, the Magistrate Judge's decision that ATG could not argue that its profit was only five percent (5%) is unassailable.

B.    The District Court Did Not Affirm The Sanction Order Of The Magistrate Judge Based Upon Spoliation

ATG assails the order of the District Court upholding the sanction award by misstating its basis.    ATG predicates its argument on the premise that the Magistrate Judge ruled ATG had "spoliated documents", and thus should be "sanctioned."   In fact, the Magistrate Judge specifically ordered: "that Plaintiff's Motion for Default Judgment as sanctions for failing to comply with this Court's August 30, 2013 Order [dkt no. 130] is granted it part and denied in part." (emphasis added).   The August 30, 2013 Order sanctioned ATG for violating the Magistrate Judge's August 2, 2013 Order and required ATG to produce by September 4, 2013 all invoices in their native format.   The default motion was filed because ATG failed to comply with the August 2, 2013 Order.   ATG filed Rule 72(a) exceptions to the two September 13, 2013 Orders which: (1) denied the Motion for Limited Reconsideration; and (2) created the presumptive jury instruction. The District Court properly granted the Rule 72(a) exception to the denial of the Motion for Reconsideration as to the fine.   The District Court ruled that the amount of the fine was punitive because it was not directly tied to any specific costs or expenses and it was not intended to coerce ATG into providing the discovery.   JA1315-16.   The District Court correctly affirmed the Magistrate Judge's Order of the sanction of the presumptive jury instruction because it was a

29

direct result of ATG's repeated violation of specific court orders which effectively frustrated Blue Sky's ability to prove its damages.  JA1315.

During the Rule 72(a) Motion hearing, (JA681-747), ATG acknowledged that the Magistrate Judge's ruling of September 13, 2013 was "based on what he viewed as defaults under his previous Orders."   JA691-92.   ATG further acknowledge at that hearing that, while it had been ordered to produce actual invoices, it instead produced spreadsheets which were not created until "sometime in August 2013" (JA693) despite ATG's counsel previously referring to the spreadsheets as translations of invoices during a prior hearing.  JA544.

In ruling on the only Rule 72(a) exception filed, the District Court concluded that the Magistrate Judge had entered its Orders "after repeated failures on the part of Defendant ATG to comply with its discovery obligations, including specific Court Orders, and its failure to adequately explain those failures, all of which effectively limited, if not entirely eliminated, Plaintiffs' opportunity to establish the damages they were claiming."   JA748.   The Court went on, "the sanction imposed with respect to damages [doc. No. 151] was reasonably related to Defendant's failures and the relief necessary to address effectively the prejudice to the Plaintiffs caused by Defendant's failures."  JA748-49.  There is no reference to spoliation in the District Court's order.   The District Court focused on the

discovery abuses in its Memorandum Opinion and never mentions spoliation as the basis for its rulings.  JA1311.

ATG has latched onto a comment made during the colloquy at the Magistrate Judge's hearing on the Motion for Default as the lynchpin for its argument.  ATG focuses on the comment made by the Magistrate Judge that ATG was required to "preserve all documents because you don't know what may or may not be relevant" as the sole rationale for the Magistrate Judge's ruling on the Motion for Default.  This is clearly at odds with the Magistrate Judge's ruling, and the District Court's understanding of that ruling upon the Rule 72(a) Motion.  ATG further perpetuates this mistake by arguing on Brief that the District Court erred in not granting its exceptions to the Magistrate Judge's ruling based upon the alleged error of law, which ATG argues constitutes an abuse of discretion.  Without question, the District Court carefully examined the ruling of the Magistrate Judge, and concluded that the sanction was proper, given the repeated failures of ATG to comply with discovery Orders that the Magistrate Judge had previously entered.

Assuming arguendo that the District Court did consider the issue of spoliation, ATG's argument still fails.  ATG correctly cites *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) for the proposing that "the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case" for spoliation to have occurred.  *Id.*  ATG has stated that all of its invoices to

31

the Ministry were omnibus and unsegregated and included tickets purchased from all of its more than 20 vendors on the same invoice. JA205. ATG knew the Complaint alleged that Blue Sky had not been paid for the cost of the tickets and claimed an entitlement to profits on the difference between the purchase price paid by ATG to Blue Sky and the price billed and paid by the Ministry to ATG. ATG also took the position that it could not bill the Ministry for Blue Sky's tickets because of a lack of proper documentation accompanying the tickets even though they had cleared more than $17,000,000.00 worth of tickets purchased by Blue Sky. The actual invoices to the Ministry from ATG were central to these issues and ATG knew it. ATG made no attempts to explain when or how it destroyed the documents. Based on its own evidence, arguments and failure to explain its actions, ATG admitted to spoliation.

### C. The District Court's Evidentiary Sanction Was Appropriate Given ATG's Discovery Abuse

The four prong test set out in *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir.1998) establishes that the sanction awarded by the Magistrate Judge and confirmed by the District Court was appropriate. "The court must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary,

32

(3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.*

### 1.    ATG's Bad Faith

While the Magistrate Judge did not find that ATG acted in bad faith, it is interesting to note that ATG is still unable to provide an accurate description of what documents it produced during discovery.  ATG claimed, and continues to claim, that it "had produced all invoices that it had submitted to the Ministry for tickets purchased by Blue Sky, LLC."  Appellant's Brief, p. 10.  In its Brief, ATG refers to these invoices as "English translation[s]".  The record is clear that these documents which were produced were never claimed to be English Translations. That is not factually in the record, and is not supported by ATG's citation to Joint Appendix pages 507 and 290-95.  The documents referenced on those pages do include coversheets which appear to be accompanied by English translations, but the invoices themselves were identified as the "actual invoices."  The fact that the invoices are mostly in English is inconsistent with what ATG's invoices were testified to be—which was entirely in Arabic.  More troubling was the claim that these were the only invoices reflecting Blue Sky tickets despite ATG verifying that more than Sixteen Million Dollars of Blue Sky tickets had been properly documented for payment.

Also troubling is ATG's argument in Section 5 of its "Procedural History". ATG claims that it had produced all the documents requested at Mr. Ragaie's deposition. Appellant's Brief p. 14. The question is not what was requested at the deposition, but what was ordered to be produced by the Magistrate Judge. The Orders to produce invoices were clear and unambiguous. The Magistrate Judge ultimately found that the 5,266 pages of spreadsheets finally produced was not what he had ordered to be produced, and that formed the basis for his award of sanctions. Whatever was requested at the deposition is completely irrelevant to what was ordered. The Magistrate Judge ultimately awarded sanctions for failing to comply with the Order and not for failing to produce what Plaintiffs allegedly requested at a deposition. ATG then states that "the Magistrate Judge did not seem to contemplate the possibility that the extensive spreadsheets had been prepared earlier in the regular course of ATG's business." Appellant's Brief p. 16. At the hearing on the Rule 72(a) exception, Counsel for ATG acknowledged that the spreadsheets had been prepared in August of 2013. JA693. The admission was made despite ATG previously representing to the Magistrate Judge that the spreadsheets were the actual invoices as ordered to be produced. JA517-18; JA541. Other than the $50,000.00 fine imposed by the Magistrate Judge on the renewed Motion for Sanctions, none of his prior rulings were questioned by ATG pursuant to Rule 72.

### 2.    Prejudice Caused By ATG's Actions

The question of profit earned by ATG on its contract with the Ministry goes to the very heart of Blue Sky's case.  The Magistrate Judge advised ATG as such during the oral argument held on August 30, 2013 when he stated that "[t]he plaintiffs can't prove their case about how much they believe is owed without the invoices." JA540.  ATG understood - or certainly should have understood - what it was doing by withholding production in contravention of this Court's orders.  The District Court also concluded that Blue Sky was clearly prejudiced by ATG's selective production of documents and information.  JA620-21. The prejudice to Blue Sky was evident and ATG's actions appeared to be an intentional attempt to deny Blue Sky essential proof of its claims.

Curiously, at Page 24 of its Brief, ATG argues that the unrebutted evidence at trial was that the invoices produced by ATG were the only invoices containing Blue Sky, LLC tickets totaling around $800,000.00.  It is curious because it is precisely the failure to produce all of the documents that were ordered to be produced which prevented Blue Sky from proving that other invoices had been sent.  It is also contrary to the spreadsheets which showed over $1,100,791.94 being invoiced to the Ministry from tickets purchased by Blue Sky.  JA545. Regardless, this claim by ATG was decided as a matter of fact by the District Court Judge to not be credible, and not in line with any business judgment, other

35

than, perhaps, an intent to deprive Blue Sky of its rightful share of the profits. JA1313.

### 3.    The Need for Deterrence

The need to deter litigants from violations of court orders for discovery abuses after being expressly warned of the consequences of failing to produce relevant documents is unquestionable.  The Fourth Circuit has held that district courts should be afforded "substantial discretion in managing discovery," *LoneStar Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). The District Court properly sanctioned ATG for its continued discovery abuses and refusal to produce relevant documents. The ability of the district court to control cases argued before it through its written orders is paramount.

### 4.    Less Drastic Sanctions Would Not Have Been Effective.

As a result of ATG's continued discovery abuses, Blue Sky sought default judgment against ATG.  The Magistrate Judge and District Court found that the less drastic sanction of the presumptive jury instruction was appropriate.  The jury instruction imposed by the Magistrate Judge did not preclude ATG from producing evidence to overcome the presumption.  ATG was unable to rebut the presumption because of prior rulings made by the Magistrate Judge which were not properly excepted to under Rule 72; its own failure to produce evidence and witnesses in

accordance with the Federal Rules of Civil Procedure; and various scheduling orders entered in this case.

In considering whether there is a less effective means of sanctioning the Defendants, the Fourth Circuit has "emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction." *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). The Magistrate Judge's Order of August 30, 2013 was unambiguous regarding the possibility of a default being entered against ATG for its discovery abuses. With other sanctions proving ineffective in altering ATGs conduct, the Court was left with, and ATG deserved, the sanction awarded.

At Page 52 of their Brief, ATG cites JA381 in discussing the amount of the presumption. ATG appears to deliberately misrepresent the record. ATG states, "Mr. Riad was claiming his 'ultimate share of profits…to be between 5 Million and 6 Million annually.'" In fact, JA381 is a page from an Affidavit by Mr. Riad which was used in the opposition to the First Motion for Summary Judgment. Mr. Riad was not claiming that amount as an ultimate share of profits. He stated, "Nasser told me that <u>he expected</u> my ultimate share of the profits in the new Limited Liability Company to be between Five Million and Six Million annually." JA381 (emphasis added). When quoting from the record at JA670, ATG fails to identify the following sentence, which states, "he did not testify that was what he

was promised." ATG wants the Court to believe that the calculation of profit on the tickets of $20,000,000.00 was somehow derived from Al Tayyar's comment that Riad could expect Five to Six Million Dollars a year in profits from the LLC. As reflected in the motion hearing, the Magistrate was satisfied, based on the documents actually produced by ATG and KPMG, its auditor, that the $20,000,000.00 profit number was accurate. Moreover, the District Court Judge, both on the Rule 72 Motion and independently, as reflected in his Memorandum Opinion, concluded that the $20,000,000.00 profit number was accurately and appropriately supported by the record. This finding of fact by the District Court Judge is unassailable on appeal.

Finally, when given the opportunity, ATG could identify no evidence that would allow it to disprove that Blue Sky's fifty percent share of the profits, or Ten Million Dollars, was a fair and accurate number. ATG proffered both written and oral testimony, which the District Court properly ruled was inadmissible, as not being properly identified in discovery, precluded by the five percent ruling by the Magistrate Judge, which was not excepted to and thus became unassailable, or otherwise was not compelling. ATG did not, for instance, proffer any evidence that would have rebutted the approximate hundred-percent markup on these tickets as reflected by the spreadsheet documents they did produce, and the audited financial records, which showed how much they had been paid.

# CONCLUSION

For all of the foregoing reasons, this Court should affirm the Jury awards and findings of the District Court that: (1) the Statute of Frauds is inapplicable to the oral contract between Blue Sky and ATG because Blue Sky could have fully performed within a year of the entry of the contract; (2) ATG failed to properly preserve any assignment of error concerning the District Court's factual findings regarding Blue Sky's damages; (3) the District Court properly reviewed and affirmed the sanctions imposed by the Magistrate Judge against ATG because of its discovery abuses and disregard for court orders; (4) no proper appeal has been made on behalf of Al Tayyar; and, (5) alternatively, should the Court reverse the District Court's finding that the Statue of Frauds is inapplicable that the matter be remanded to the District Court for consideration of the issues of equitable estoppel and part performance only.   The costs of this appeal should be taxed against Defendants.

Respectfully Submitted,

  /s/

Warner F. Young, III, Esq.
Matthew C. Indrisano, Esq.
ALLRED, BACON, HALFHILL & YOUNG, PC
Suite 700
11350 Random Hill Road
Fairfax, VA 22030-0000
Email: mindrisano@abhylaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

   The word count of this brief is <u>9, 458</u>.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point</u>.

May 23, 2014

<u>/s/</u>
Warner F. Young, III, Esq.

40

## **CERTIFICATE OF SERVICE**

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this May 23, 2014, filed the required copies of the foregoing Brief of Appellees in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Brief of Appellees using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Christopher M. Curran
Nicole Erb
Matthew Sterrett Leddicotte
WHITE & CASE, LLP
Suite 600
701 13th Street, NW
Washington, DC 20005-0000
Email: ccurran@whitecase.com
Email: nerb@whitecase.com
Email: mleddicotte@whitecase.com

　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　Warner F. Young, III, Esq.